Davis O. HENIFORD, Jr., Charles E. Hodges, and W. C. Bell, individually and as stockholders of Bell Pontiac-GMC, Inc., and Bell Pontiac-GMC, Inc., a corporation, Plaintiffs,

v.

AMERICAN MOTORS SALES CORPORATION, and Ralph C. Cooke, Defendants.

Civ. A. No. 79–220.

United States District Court, D. South Carolina, Florence Division.

May 25, 1979.

330

James P. Stevens, Sr., James P. Stevens, Jr., J. Jackson Thomas, Stevens, Stevens & Thomas, Loris, S. C., Ronald L. Motley, Blatt & Fales, Barnwell, S. C., for plaintiffs.

Allen L. Ray, Conway, S. C., for AMSC.

John C. Thompson, Conway, S. C., for Cooke.

## ORDER

CHAPMAN, District Judge.

Originally instituted in the Court of Common Pleas for the County of Horry, South Carolina, this action was removed by defendant American Motors Sales Corporation [AMSC] to this Court on February 2, 1979. The circumstances surrounding the removal are far from typical and present what the Court ascertains as a novel question, requiring almost a complete circumspection of the removal provisions for its resolution. The case is presently before the Court on defendant AMSC's motion for an Order asserting the jurisdiction of this Court and enjoining any further proceedings in state court, and on plaintiffs' motion to dismiss the removal petition or, in the alternative, to remand the matter.

Defendant AMSC did not perfect removal of this cause until after the jury had retired to determine a verdict in the trial of the case in state court. In an attempt to preserve the substantial verdict returned by the jury in their favor, plaintiffs have broadsided defendant's removal, challenging its sufficiency in almost every respect.

Plaintiffs brought this action against AMSC, a Delaware corporation with its principal place of business in Detroit, Michigan, and Ralph Cooke, a resident of South Carolina, alleging violations of South Carolina's statute regulating manufacturers, distributors, and dealers of motor vehicles, § 56–15–10 *et seq.* S.C.Code (1976). The individual plaintiffs are citizens and residents of South Carolina which is also the principal place of business and state of incorporation of the corporate plaintiff. The amended complaint alleges wrongful termination of a franchise agreement to sell AMSC's products and asserts, among other things, that AMSC worked in concert with Ralph Cooke in illegally breaching said franchise agreement. Plaintiffs allege that Ralph Cooke, a former franchisee of AMSC, performed certain acts and made certain misrepresentations to plaintiffs, the appar-

ent and allegedly contracted successors to the dealership in dispute, causing a wrongful termination of the franchise.

At the close of the testimony in the trial of the case on Thursday, February 1, 1979, both defendants made motions for a directed verdict, which motions were denied by the court. Some discussion then transpired between the trial judge and counsel concerning the pleadings and damages, followed by the return of the jury and closing arguments. It is upon the closing argument of plaintiffs' counsel that AMSC premises its right to remove. Defendant AMSC contends that the case became one between parties of diverse citizenship when remarks by an attorney for the plaintiffs, in his closing statement, dismissed plaintiffs' claim against the sole resident defendant. The closing arguments of all three attorneys for the plaintiffs have been transcribed and supplied the Court.

All three of plaintiffs' counsel made closing statements to the jury. The first two arguments of plaintiffs' attorneys zeroed in on AMSC, completely sidestepping defendant Ralph Cooke. In arguing that the party guilty of wrongdoing was the corporate defendant, AMSC, plaintiffs' counsel, Mr. Jackson Thomas, focused the jury's attention on this same defendant with the following:

> The issue is not what Mr. Heniford and what Mr. Hodges and Mr. Cooke did back in '73 or '74 when they—the issue is when Mr. W. C. Bell bought in in the early part of 1976. Did American Motors wrongfully and unlawfully, under the statute that you'll hear tomorrow, terminate, and refuse to transfer this franchise. That's the only real question before you other than damages.

Plaintiffs' counsel finally and completely isolated its true prey in the last closing statement, that of Mr. James P. Stevens, Sr.[1] It is upon his statement that defendant AMSC contends plaintiffs discontinued their action against Ralph Cooke. Along with endorsing the credibility and integrity

---

1. Plaintiffs' attorney Mr. James P. Stevens, Sr. served in the South Carolina State Senate from 1956 to 1976 as Senator from Horry County, the situs of this trial.

of Ralph Cooke, Mr. Stevens, Sr., in various parts of his closing argument, directed the jury as follows:

Ralph Cooke is a good friend of mine. He lives in my town, but let's just see. I'm not so much worried about Ralph Cooke.

\* \* \* \* \* \*

Well, let's look a little bit further at Ralph. You know—and look here, don't give a verdict against Ralph. We're not actually suing Ralph because we've found out now—found out when this case come up, that Ralph was telling the truth by the records in this particular case.

\* \* \* \* \* \*

I don't want you to give a verdict against Ralph Cooke. No we don't want a verdict against that because we have now determined that this man is telling the truth and he has all along,  .  .  .

The argument of Mr. Stevens, Sr., concluded Thursday's proceedings, and the trial did not commence again until 2:00 p. m. the following day, Friday, February 2, 1979. Upon the convening of the trial, Mr. Cooke's attorney, Mr. John C. Thompson, moved for a directed verdict on the ground that no verdict was asked against his client. The trial judge denied the motion. Counsel for AMSC, Mr. Allen Ray, then notified the Court that AMSC was removing the case to federal court because the statements of Mr. Stevens, Sr., in his closing argument, were tantamount to consenting to dismissal of the action against Ralph Cooke and, at that point or when the trial court denied Ralph Cooke's motion for a directed verdict, the case became removable. Mr. Ray also stated that it was AMSC's position that the state court lacked jurisdiction to proceed further unless and until the case was later remanded. AMSC's attorney handed plaintiffs' counsel a copy of the Notice of Removal and announced that an attorney in Columbia, South Carolina, was standing by to file AMSC's removal papers. A copy of these removal papers was then given the clerk in the state court.

Despite permitting Mr. Ray to make a short recitation of legal authority into the record, the state court denied his motion to abstain from further proceeding and continued with the case. The trial court charged the jury which retired for its deliberations at 3:12 p. m. AMSC's removal papers were filed in Columbia at approximately 4:25 p. m. The affidavit of Ms. Sandy Roberson, deputy clerk for the district court, shows the removal papers originally were designated "Columbia Division" but staff clerks altered them to show "Florence Division", the proper division for a case removed from Horry County. At approximately 5:00 p. m. the clerk of court in the state court filed copies of these removal papers and published notice thereof in court. After this announcement by the clerk that she had filed these papers, Mr. Ray made a statement into the record that he had handed a copy of the removal papers to counsel for the plaintiffs. The affidavits of all three of plaintiffs' counsel deny receiving anything more than a copy of the Notice of Removal. At 6:10 p. m. the jury returned a verdict in favor of the plaintiffs in the amount of $300,000 actual damages, to be doubled under § 56–15–110(1) S.C.Code (1976), and $100,000 punitive damages. The trial court later assessed $50,000 attorney fees against AMSC for a total of $750,000.

The basis for defendant AMSC's removal of the case is specified in its Petition for Removal as the following:

3. That upon completion of the trial of the case on February 1, 1979, the Plaintiff's attorney in his oral argument asked the jury not to find a verdict against the Defendant, Ralph Cooke and the Petitioner is informed and believes that there now exists complete diversity of citizenship.

Plaintiffs' counsel in their various affidavits assert that they had no authority to dismiss Ralph Cooke and opposed his motion for a directed verdict. They further aver that, in their view, the defendants had defended by pointing the finger at each other but that, immediately prior to trial when certain documents were revealed for the first time to them, it became clear AMSC was the culpable party.

The instant case does not present a question of fraudulent joinder or sham defendant in the technical sense. In such cases, the issue is whether the allegations of the complaint constitute a valid claim for relief against the party allegedly fraudulently joined. *Jacks v. Torrington Co.*, 256 F.Supp. 282, 286–287 (D.S.C.1966); *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962). Since § 56–15–40(1) creates liability for any motor vehicle dealer who engages in any action which is in bad faith and causes damage to any of the parties, plaintiffs' amended complaint alleged at least a minimal claim against the resident defendant Ralph Cooke. Thus, disregarding the problem of the sufficiency of the Petition for Removal to allege fraudulent joinder, the Court finds the present case may not be characterized as one of fraudulent joinder in the technical sense.

Rather, the provision determining the issue of whether this case was properly removable is 28 U.S.C. § 1446(b), which reads as follows:

> (b) The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Defendant AMSC's position is that the case could first be ascertained as one that had become removable upon the closing statement of Mr. Stevens, Sr., wherein plaintiffs' counsel repeatedly instructed the jury not to return a verdict against the resident defendant.

Thus, the Court must first decide if the remarks of plaintiffs' counsel acted to create the requisite diversity of citizenship among the parties. By directing the jury not to return a verdict against Ralph Cooke, plaintiffs' attorney, in effect, dismissed their claim against this defendant, since he expressly announced plaintiffs did not seek to impress liability upon Ralph Cooke. The remarks of plaintiffs' counsel to the jury were not retractable. By proceeding to remove this case on the basis that counsel's statement was tantamount to a dismissal, defendant AMSC implicitly consented to plaintiffs' counsel's manifestation of dismissal, as did defendant Ralph Cooke by his counsel's again moving for a directed verdict on the ground plaintiffs sought no judgment against the nondiverse defendant. Although the elements of this de facto dismissal of Ralph Cooke do not precisely follow the dictates of Rule 45(1)[2] of the Circuit Court Rules of South Carolina, which prescribes the requirements for voluntary dismissal without an order of the court, because no written stipulation of the same was filed, plaintiffs announced they were no longer going forward against Ralph Cooke, and defendants consented to this discontinuance. While the formal requirements of the rule were not met, the substantive aspects of Rule 45(1)(b) were satisfied by the conduct of the parties, resulting in the dismissal of one defendant, not the entire action as anticipated by Rule 45(1).

---

**2.** South Carolina Circuit Court Rule 45(1) as to voluntary dismissal or nonsuit specifies:

> Notwithstanding the provisions of any other Rules to the contrary, no case listed in the File Book which thereafter is settled or disposed of in any manner, shall be dismissed, marked ended, or stricken from the File Book except as follows:

1. An action may be dismissed by the plaintiff without order of Court (a) by filing and serving a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (b) by filing a stipulation of dismissal signed by all parties who have appeared in the action.
. . .

■ Even if the parties were found not to have perfected a dismissal under state court procedure, this Court determines plaintiffs' counsel's admonishment to the jury not to return a verdict against Ralph Cooke established the prerequisites for removal diversity jurisdiction under 28 U.S.C. 1441(b). This provision, in providing for removal on the basis of diversity of citizenship, specifies, in pertinent part, as follows:

> Any other such action [other than that based on federal question jurisdiction] shall be removable only if none of the parties in interest, properly joined and served as defendants is a citizen of the State in which such action is brought. 28 U.S.C. § 1441(b).

"Before determining removability under Section 1441(b) on the basis of diversity of citizenship, the court will realign the parties according to their true interest, as it would were the case brought in the federal court originally." Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3723, 603–605, and cases cited therein.

In *Indianapolis v. Chase National Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941), the Supreme Court pronounced the following criteria for determining the alignment of parties for purposes of ascertaining the presence of diversity.

> To sustain diversity jurisdiction there must exist an "actual", "substantial" controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to "look beyond the pleadings and arrange the parties according to their sides in the dispute." Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary "collision of interests" exists, is therefore not to be determined by mechanical rules. 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47 (citations omitted).

See also, *Taylor v. Swirnow*, 80 F.R.D. 79, 83 (D.Md.1978); *Mayor and City Council of Baltimore v. Weinberg*, 190 F.Supp. 140, 142 (D.Md.1961).

Upon completion of the closing arguments, what had been suggested by the first two closing arguments of plaintiffs' attorneys was finally expressly stated in the third closing statement, by Mr. Stevens, Sr.—plaintiffs did not seek to impress liability upon Ralph Cooke. Plaintiffs sought to eliminate this defendant from any possibility of liability. After the final statement of Mr. Stevens, Sr., the plaintiffs were no longer in a position adverse to Ralph Cooke. Absent an opposition of interest between plaintiffs and the nondiverse defendant, there no longer remained any actual, substantial controversy between the two, and Ralph Cooke became aligned with the plaintiff for purposes of determining diversity of citizenship. The only defendant properly to be considered for deciding diversity, AMSC, is not a citizen of South Carolina, thus satisfying the requirements for removal based on diversity of citizenship under § 1441(b).

■ Typically where removal is based on diversity of citizenship, diversity must exist at the time the action is instituted in state court and the time of removal. Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction, § 3723,592. However, diversity is tested only at the time of removal if such removal is premised on the plaintiff's voluntarily dropping the nondiverse defendant, although diversity did not exist among the parties at the commencement of the state court action. The court in *Stamm v. American Telephone & Telegraph Co.*, 129 F.Supp. 719 (W.D.Mo.1955) summarized the rule upholding removal in such cases:

> It is quite well-settled that if the plaintiff voluntarily dismisses, discontinues, or in any way abandons, the action as to the resident joint defendant, the cause then becomes removable, and may, upon prompt action, be removed by the nonresident defendants who have been served. Section 1446, Title 28 U.S.C.A.; *Houp-*

burg v. Kansas City Stock Yarks Company, D.C.Mo.1953, 114 F.Supp. 659, 660; Maxwell v. De Long, D.C.Mo., 107 F.Supp. 166; Southern Pacific Co. v. Haight, 9 Cir., 126 F.2d 900, 903; Powers v. Chesapeake, etc., R. Co., 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673; Yulee v. Vose, 99 U.S. 539, 25 L.Ed. 355; Fidler v. Western Coal & Mining Co., D.C.Ark., 33 F.2d 158; Hane v. Mid-Continent Petroleum Corp., D.C.Okl., 47 F.2d 244, 247; Fogarty v. Southern Pacific Co., C.C., 121 F. 941. 129 F.Supp. 719, 721.

See also, Kilpatrick v. Arrow Co., 425 F.Supp. 1378 (W.D.La.1977); First National Bank in Little Rock v. Johnson & Johnson, 455 F.Supp. 361 (E.D.Ark.1978). Regardless of whether it be classified a dismissal, discontinuance, termination, or abandonment, plaintiffs extinguished their claim against the resident defendant in explicitly instructing the jury not to return a verdict against him.

■ The paramount consideration in determining whether the dropping of the resident defendant as an adverse party renders a case removable is if such resulted from the *voluntary* act of the plaintiff. *Bumgardner v. Combustion Engineering*, 432 F.Supp. 1289 (D.S.C.1977); *Winters Government Securities Corp. v. Cedar Point State Bank*, 446 F.Supp. 1123 (S.D.Fla.1978); *Martropico Compania Naviera S. A. v. Pertamina*, 428 F.Supp. 1035 (S.D.N.Y.1977); *Holloway v. Pacific Indemnity Co.*, 422 F.Supp. 1036 (E.D.Mich.1976); *Saylor v. General Motors Corp.*, 416 F.Supp. 1173 (E.D.Ky.1976). This requirement of voluntariness ensures that plaintiffs have finally terminated their action against the resident defendant and were not victim to an involuntary dismissal from which they would have an appeal.

■ Plaintiffs object that the literal requirements of § 1446(b), which provides for the removal of cases that were not originally removable on the basis of the initial pleading, have not been met in that the defendant AMSC never received any amended pleading, motion, or other paper from which it could be ascertained the case

had become removable. However, courts have permitted removal under § 1446(b) where the dismissal or discontinuance as to the resident defendant is manifested by the conduct of the plaintiff. *Bumgardner v. Combustion Engineering, supra; Gregory v. West Virginia Pulp & Paper Co.*, 112 F.Supp. 8, 10 (E.D.N.C.1953); *Kulbeth v. Woolnought*, 324 F.Supp. 908 (S.D.Tex. 1971). Moreover, the plain purpose of the statute's designation of some "other paper" is to initiate the 30 day removal period "only after the defendant is able to ascertain intelligently that the requirements of removability are present." *First National Bank in Little Rock v. Johnson & Johnson, supra*, n.1. This object of notice was fulfilled in the present case since defendant perfected removal within a day of the case's becoming removable.

■ The purpose of allowing removal in diversity cases is to secure a competent and impartial tribunal for one who has been brought unwillingly into state court, the supposition being that possibly the state tribunal may not be impartial between its own citizens and nonresidents. *Gamble v. Central of Georgia Railway Co.*, 356 F.Supp. 324, 329–330 (M.D.Ala.1973); *Marketing Showcase, Inc. v. Alberto-Culver Co.*, 445 F.Supp. 755, 760 (S.D.N.Y.1978). Although the right of removal is a statutory right, it is a substantial right of the nonresident defendant. Its significance is manifested, in the instant case, by a review of the transcript of the closing statements of plaintiffs' attorneys and by the tenacity with which both sides contest the present motion.

Plaintiffs may argue technical flaws in defendant AMSC's removal, such as that Ralph Cooke was not formally dropped from the state court record or that there is no paper representing a change of circumstances warranting removal, but these alleged inadequacies do not defeat the right. Where removability does not occur until late in the litigation of a case and the defendant proceeds with removal without delay, the Supreme Court has held that deficiencies with respect to incidental provi-

sions of the removal statute are not fatal to the removal, if they are the result of circumstances beyond the defendant's control. *Powers v. Chesapeake & Ohio Railway Co.,* 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673 (1898). In *Powers,* the plaintiff discontinued his action against the nonresident defendants when the case was called for trial. In permitting the defendant in *Powers* to file a petition for removal after the time provided in the statute, then in effect, had elapsed, where the case did not become removable until after this time, the Supreme Court commented as follows in upholding the removal:

The reasonable construction of the act of Congress, and the only one which will prevent the right of removal, to which the statute declares the party to be entitled, from being defeated by circumstances wholly beyond his [defendant's] control is to hold that the incidental provision as to the time must, when necessary to carry out the purpose of the statute, yield to the principal enactment as to the right; and to consider the statute as, in intention and effect, permitting and requiring the defendant to file a petition for removal as soon as the action assumes the shape of a removable case in the court in which it was brought. 169 U.S. 92, 100–101, 18 S.Ct. 264, 267, 42 L.Ed.2d 673.

■ Although the particular problem in *Powers* now has been obviated by the terms of § 1446(b) which permits removal of suits not originally removable, the reasoning of the decision guides the present case. That the plaintiffs refused to put in writing their dismissal of Ralph Cooke, although they had effectively discontinued their action against him, can not defeat AMSC's right to removal, since both the circumstances creating removability and the alleged formal deficiencies were wholly beyond the control of AMSC.

*Powers* dictates that AMSC's removal in the present case be upheld. Otherwise, plaintiffs have earned the distinction of having devised the gameplan for circumventing removal. A resident plaintiff, who desires to pin down a nonresident corporate defendant in state court, merely must join a resident defendant, against whom it has an arguable claim, and then by directing the jury not to return a verdict against the resident defendant, throw the nonresident defendant to the jury by itself. In such manner, the nonresident defendant could be totally deprived of its right to removal, although such case had become one properly removable and plaintiff's tactics serve to emphasize the significance of the right. However, as the above quote of the Supreme Court in *Indianapolis* noted, litigation is "not a game of chess", nor, this Court finds, should a nonresident defendant be straightjacketed or deprived of its legitimate entitlement to removal by a plaintiff's artful maneuvering.

■ Plaintiffs next contend that, assuming the case was properly removable, AMSC waived its right to removal by not filing its removal petition until late in the afternoon of the following day after the closing statements. Plaintiffs rely on *Waldron v. Skelly Oil Co.,* 101 F.Supp. 425 (E.D. Mo.1951), where the court found waiver of the right to remove. There, the nonresident defendant learned in plaintiff's attorney's first statement to the jury that the resident defendants were dismissed, with the trial court expressly acknowledging the same at that time, yet did not announce its intention to remove until after completion of plaintiff's opening statement and did not file its removal papers until after the trial's conclusion. In the instant action, plaintiffs did not advise AMSC of their discontinuance as to the resident defendant until the final closing argument. Thereupon, before the trial advanced any farther, upon the reconvening of the court, AMSC notified plaintiffs and the court of its intent to remove and made a motion that the proceedings in the state court be terminated. The Court in *Waldron* decided that defendant's notice of intent to remove was untimely because it could have given such prior to the actual commencement of the trial but permitted plaintiff to proceed with his case. In contrast, AMSC in the present case did not allow the trial to advance to the next stage and gave seasonable notice.

■ Moreover, that the removal papers were not filed in federal court until during the jury's deliberation does not amount to a waiver by AMSC. As illustrated by the Court in *Waldron*, the important moment is, when were the plaintiff and trial court apprised of defendant's intent to remove. AMSC's notice was timely, and it perfected removal before a verdict was returned. The state court announced it would continue regardless of defendant's removal; additional proceedings in the state court would not have been averted if the removal papers were filed earlier that afternoon. The state court had decided to go ahead despite imminent removal. Under such circumstances, defendant's actions do not constitute waiver. As this Court stated in *Hildreth v. General Instrument, Inc.*, 258 F.Supp. 29 (D.S.C.1966), "[w]aiver of the right of removal is still possible, but the defendant's intent must be clear and unequivocal, and the courts have been slow to find waiver." 258 F.Supp. 30. If, in a removal from state court, the petitioner "makes timely application for removal and properly objects to its denial by the state court, participation in subsequent proceedings in state court is not a waiver of his claim that the cause should have been litigated in the federal court." *Metropolitan Casualty Ins. Co. v. Stevens*, 312 U.S. 563, 568, 61 S.Ct. 715, 718, 85 L.Ed. 1044 (1940).

There also exists authority that, in situations where the case does not become removable until its late stages due to the actions of plaintiff, plaintiff can not properly complain of the time of such removal, if defendant does so as soon as can be expected. The closing statements of plaintiffs' counsel suggest the joinder of the resident defendant was to prevent removal by the nonresident and trial in the federal court. "[I]f the conduct of plaintiff in a given case was merely a device to prevent removal, it might be that objection as to the time could not be raised by him." *Northern Pacific R. Co. v. Austin*, 135 U.S. 315, 318, 10 S.Ct. 758, 760, 34 L.Ed. 218 (1890).

■ Plaintiffs additionally object that removal must be predicated on the record of the trial court and that counsel's closing statements are not properly evidentiary in character or part of the record. Plaintiffs are correct that "removability is to be determined from the record as it existed at the time removal was effectuated." *Cooper v. Georgia Casualty & Surety Co.*, 241 F.Supp. 964, 965 (D.S.C.1965). Although statements by counsel are not evidence, they are "as much a part of the case as the evidence, or for that matter the verdict of the jury." *Waldron v. Skelly Oil Co., supra*, 428. The final arguments of counsel at trial are part of the record and capable of review on appeal provided they are adequately transcribed. See *South Carolina State Highway Department v. Meredith*, 241 S.C. 306, 128 S.E.2d 179 (1962); *Lawrence v. Southern Ry.—Carolina Division*, 169 S.C. 1, 167 S.E. 839 (1933).

■ In support of their motion to dismiss the removal petition, plaintiffs argue the notice requirements of § 1446(e) were not complied with. This section specifies the following:

(e) Promptly after the filing of such petition and bond the defendant or defendants shall give written notice thereof to all adverse parties and shall effect the removal and the State court shall proceed no further unless and until the case is remanded. 28 U.S.C. 1446(e).

The statute does not require service of all the removal papers on the plaintiffs, as plaintiffs contend, but only a written notice of removal. Plaintiffs were immediately and fully notified of the removal. Defendant gave plaintiffs written notice of removal. Although § 1446(e) states such notice is to be given after the filing of the removal petition, "substantially simultaneous notice given the same day, though not required, is at least permissible under the present statute, where no prejudice is shown to exist from any such action." *Mahony v. Witt Ice and Gas Company*, 131 F.Supp. 564, 566 (W.D.Mo.1955). Plaintiffs were not in the least prejudiced by receiving written notice of removal before, instead of after, the filing of the removal provision. The requirements of § 1446(e) do not bar the removal.

Plaintiffs further seek to defeat the jurisdiction of this forum by arguing that the defendant initially removed the case to the wrong division of this district court. However, defendant's petition for removal alleges sufficient jurisdictional grounds and would have been subject to amendment if the deputy clerk of this Court had not advised it, upon filing, of the incorrect designation of division of this Court. *Saldibar v. Heiland Research Corp.,* 32 F.Supp. 248, 250 (S.D.Tex.1933).

Similarly, plaintiffs' objection that all party defendants did not join in the petition does not overturn the removal. As discussed earlier, plaintiffs effectively dismissed Ralph Cooke as a defendant. Even if the status of Ralph Cooke is not conclusive under South Carolina law, he was no longer a party adversary to plaintiffs. He is realigned as a plaintiff for purposes of determining diversity, and, thus, is also viewed as a plaintiff for purposes of determining which parties must join in the petition. *Glenmede Trust Co. v. Dow Chemical Co.,* 384 F.Supp. 423 (E.D.Pa.1974).

Once it became ascertainable that the instant action was removable on the basis of diversity of citizenship, after completion of the final arguments of plaintiffs' counsel, defendant AMSC seasonably perfected removal under § 1446(b). Plaintiffs argue that removal in the present case, at this late stage of the state court proceedings, offends fundamental principles of comity, intruding on the domain of the state court. Courts that have been confronted with the question of removal during trial in state court have not found this the controlling consideration, but, instead, dwell on the removal provisions and state law to determine if removal was proper. See, *Powers v. Chesapeake & Ohio Ry. Co., supra; Southern Pacific Co. v. Haight, supra; Waldron v. Skelly Oil Co., supra;* in particular *First National Bank in Little Rock v. Johnson & Johnson, supra* [attempted removal based on motion made "[s]hortly before case was submitted to the jury"]. While this Court is mindful that removal statutes are to be strictly construed with regard for the jurisdiction of state courts, the Court will not permit crafty trial tactics to deprive a nonresident defendant of a valid statutory right to removal where such is timely implemented. Proper removal does no violence to state-federal relations.

Once the clerk of court in state court filed the removal papers at 5:00 p. m. on Friday, February 2, 1979, the removal of this case to this Court was effected. 28 U.S.C. § 1446(e). At that time, state jurisdiction ended and any further action in state court was void. *Barrett v. Southern Ry. Co.,* 68 F.R.D. 413, 419 (D.S.C.1975); 28 U.S.C. § 1446(e). Consequently, the verdict of the jury and further proceedings in the state court trial of this action after removal are a nullity. Since this Court had jurisdiction of the present action at the time the verdict was returned and judgment was entered, the Court sets aside the same as null and void for want of jurisdiction. *Barrett v. Southern Ry. Co., supra.*

IT IS, THEREFORE, ORDERED that plaintiffs' motion to dismiss the removal petition or, in the alternative, to remand be, and the same is hereby, denied.

IT IS FURTHER ORDERED that defendant AMSC's removal from the Court of Common Pleas for the County of Horry, South Carolina, be sustained and that all proceedings in the state court after the removal to this court was effected be, and the same are hereby, declared a nullity.

AND IT IS SO ORDERED.