**Blanca DiNATALE, Plaintiff,**

v.

**SUBARU OF AMERICA, a foreign corporation, Defendant.**

**Civ. No. 85–CV–5183–DT.**

United States District Court, E.D. Michigan, S.D.

Dec. 17, 1985.

Larry D. Barnett, Barnett & Bars, Pontiac, Mich., for plaintiff.

Steven C. Nadeau, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for defendant.

## MEMORANDUM AND ORDER DENYING MOTION TO REMAND

COHN, District Judge.

### I.

This is an automobile products liability case. On October 29, 1982, plaintiff, who had been severely injured in an automobile accident, filed suit in Wayne County Circuit Court against Subaru of America (Subaru), a foreign corporation which imported the automobile in which plaintiff was a passenger when she was injured, Fuji Heavy Industries, Ltd. (Fuji), a foreign corporation which manufactured the automobile, Sabra Dental Studio (Sabra), a Michigan corporation which employed the owner and operator of the automobile in which plaintiff was a passenger and the owner and operator, Robert Camargo (Camargo). Fuji was not served. Plaintiff subsequently sued Fuji in this court; the case is pending. On May 22, 1984 Camargo was dismissed from the Wayne County case by stipulation. On or about November 6, 1985 Subaru learned plaintiff resolved her dispute against Sabra and thereafter, on November 7, 1985, removed the Wayne County case to this court. The petition for removal alleged that a "settlement" had been entered into between plaintiff and Subaru which was (1) off the record; (2) not recorded in the form of an order so as to prevent removal; (3) evidenced by an exchange of letters which Subaru could not obtain; and (4) effectively a voluntary dismissal. Subaru argued that this "settlement" thereby created diversity between plaintiff and Subaru, the only parties remaining in the case.

On November 12, 1985 plaintiff moved to remand the case to the Wayne County Circuit Court on the ground Sabra had not been dismissed. On November 13, 1985 plaintiff's counsel filed an affidavit in support of the motion to remand explaining the "settlement" with Sabra as merely an understanding not to attempt to collect any judgment against Sabra, as reflected in a letter dated September 6, 1985 from Sabra's counsel to plaintiff's counsel which reads as follows:

This will confirm the agreement we entered into. That agreement was that we would not further prosecute our Motion for Summary Disposition, on behalf of Sabra Dental Studios of Michigan, Inc., a Defendant in the case entitled [*DiNatale v. Subaru*].

The consideration for our not continuing to prosecute the Motion on behalf of the Defendant, Sabra Dental Studios of Michigan, Inc., is the agreement whereby we would appear and remain throughout the trial of this cause. That no matter the outcome of the trial, the Plaintiff would not attempt any recovery against Sabra Dental Studios of Michigan, or any other Sabra entity. The consideration for the Plaintiff not attempting any recovery against Sabra Dental Studios of Michigan, or any other Sabra Dental entity would be the withdrawing of the Motion for Summary Disposition, on behalf of Sabra Dental Studios of Michigan, Inc., and allowing the matter to proceed to trial, in the normal course of the trial

schedule by the Circuit Court, for the County of Wayne.

I do not feel that we need a formal agreement between ourselves, spelling out every item that has been stated above.

On November 13, 1985 a hearing was held on the motion to remand. It was then adjourned to November 25, 1985 to allow for further development of the record as to what precisely was the agreement between plaintiff and Sabra. It was plaintiff's position that the letter agreement was prompted by the likelihood that Sabra was uncollectible and therefore the agreement not to attempt collection of any judgment was a gesture only and that Sabra's continued presence in the Wayne County case was a matter of substance. On November 25, 1985 the Court, still dissatisfied with the state of the record and the ambiguous nature of the agreement between plaintiff and Sabra, directed that Sabra's lawyer be deposed.

Sabra's laywer, in his deposition, was unable to explain the rather unorthodox agreement Sabra entered into with plaintiff. As far as the lawyer was concerned "any claim for damages against Sabra ..." had been resolved. The lawyer characterized the letter as a "Mary Carter Agreement".[1] To him "it was resolving the aspect as to Sabra of paying any money damages in regard to the claims made by the plaintiff".

## II.

## A.

This is not a case of fraudulent joinder. As explained in Hart and Wechsler, *The Federal Courts and The Federal System* 1215 (2d ed. 1973):

The doctrine has long been recognized that the "fraudulent" joinder of a resident defendant is no bar to removal. If a petition for removal contained allegations sufficient, if proved, to show "fraud", the state court was bound to grant the petition, leaving the proof to be made in the federal court. *But the mere purpose to defeat removal did not constitute fraud, even though the resident defendant was known to be judgment-proof.* (emphasis added).

What is involved here is a proper interpretation of 28 U.S.C. § 1446(b) which reads:

If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Three cases are instructive.

In *Heniford v. American Motors Sales Corp.*, 471 F.Supp. 328 (D.S.C.1979), the non-resident defendant removed the case following plaintiff's final argument to the jury, in which his lawyer told the jury

Well, let's look a little bit further here at Ralph [the resident defendant]. You know—and look here, don't give a verdict against Ralph. We're not actually suing Ralph because we've found out now— found out when this case come up, that Ralph was telling the truth by the records in this particular case.

. . . . .

I don't want you to give a verdict against Ralph Cooke. No, we don't want a verdict against that because we have now determined that this man is telling the truth and he has all along.

1. *Modern Legal Glossary* 333 (1980) describes "Mary Carter Agreements" as

Contracts by which one co-defendant secretly agrees with the plaintiff that if such co-defendant will proceed with his defense, his own liability will decrease proportionately by increasing the liability of other co-defendants.

Named after a Florida case involving the Mary Carter Paint Company, such agreements pose serious ethical problems.

It is not necessary to discuss the implications of Mary Carter agreements with regard to this case, or whether in fact the "settlement" here constitutes a Mary Carter agreement.

*Id.* at 332. The court held that the case became removable on the basis of this statement because "[b]y directing the jury not to return a verdict against Ralph Cooke plaintiff's attorney, in effect, dismissed his claim against this defendant since he expressly announced plaintiffs did not seek to impress liability upon Ralph Cooke." *Id.* at 333. The court said that the technical flaws in the removal—the fact that Ralph Cooke was not formally dropped and there was no paper representing a change of circumstances warranting removal—did not defeat the non-resident defendant's right to remove.

In *Erdey v. American Honda Co., Inc.,* 96 F.R.D. 593 (M.D.La.1983), the plaintiff voluntarily settled with resident medical defendants under an agreement in which these defendants were released and plaintiff's lawyer was instructed to dismiss the action against them. Under Louisiana law, because payment was coming from a patient's compensation fund, the agreement was subject to state court approval after which a judgment was entered against the fund. Thereafter the remaining non-resident defendants removed the case to federal court. Plaintiff moved to remand arguing the medical defendants were not dismissed from the case since no order of dismissal had been entered. The court declined to remand on the grounds there had been no adjudication on the merits and the litigation had been terminated by the voluntary act of the plaintiff. The court explained

> Where plaintiff, by his voluntary act has definitely indicated his intention to discontinue the action as to the non-diverse defendant, plaintiff has indicated that he no longer desires to dictate the forum and the case then becomes removable under 28 U.S.C. § 1446(b). *Powers v. Chesapeake & O. Ry. Col.,* 169 U.S. 92 [18 S.Ct. 264, 42 L.Ed. 673] (1898). The technicality of how plaintiff's intention is expressed is of no moment—it is the

expression of the intent by plaintiff which makes the case removable. *Id.* at 599.

*Aynesworth v. Beech Aircraft Corporation,* 604 F.Supp. 630 (W.D.Tex.1985), involved a fact situation similar to that in *Heniford, supra.* The case was removed to federal court on the grounds that plaintiffs in final argument concentrated primarily on their theory against the non-resident defendant and strongly urged the jury to find the non-resident defendant solely liable. Plaintiffs, however, did not state in absolute terms that they did not want the jury to find the resident defendants liable and said that if the jury in fact found the resident defendant liable they should return a verdict on that basis. The court distinguished *Heniford,* and remanded the case to state court, saying:

> At no time did plaintiffs state they absolutely did not want the jury to return a verdict against the Texas defendant.

*Id.* at 636.

This case, as will be described, is substantially closer to *Heniford* and *Erdey* than *Aynesworth.*

### B.

#### 1.

■ In *B., Inc. v. Miller Brewing Company,* 663 F.2d 545 (5th Cir.1981), in a comprehensive discussion of the "question of a forum rather than substance" the court stressed the importance of federal courts establishing at the threshhold that "the dispute is within the province of controversies assigned to it by the Constitution and statute", and if it fails to do so it "poaches upon the territory of a coordinate judicial system, and its decisions, opinions, and orders are of no effect". *Id.* at 548.[2] The court also stressed the obligation of "the party who urges jurisdiction upon the court ... bear[ing] the burden of demonstrating that the case is one which is properly before the federal tribunal". *Id.* at

**2.** See Z. Chafee, Jr., *The Thomas M. Cooley Lectures, Second Series: Some Problems Of Eq-* *uity* 311–316 (1950).

549. This is especially important since an order denying a motion to remand on the grounds a case was improvidently removed is not immediately appealable. See 14A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3740 at 596-98.

Federal courts have an obligation to police their jurisdictional powers with great scrutiny, particularly when it comes to the validity of transactions designed to defeat their jurisdiction. 14 Wright, Miller & Cooper *supra*, § 3641 at 141.

### 2.

Plaintiff's lawyer says the agreement with Sabra arose from the fact that he could not persuade his client to approve a dismissal of Sabra. The lawyer says that because his client does not speak English he could not convince her that Sabra was uncollectible and that she was unlikely to recover anything from Sabra even if she obtained a judgment. This does not suggest that plaintiff's lawyer did not intend by the letter agreement to settle the case as to Sabra; rather, this suggests at best that plaintiff did not formally approve her attorney's agreement with Sabra.

■ I am satisfied, however, that plaintiff by the letter agreement, as was the situation in *Heniford* and *Erdey, supra,* unequivocally abandoned her claim against Sabra and that the sole purpose of the form of settlement with Sabra was to defeat Subaru's right to remove the Wayne County case to federal court. Sabra effectively was dismissed from the Wayne County case. Accordingly, the motion to REMAND is DENIED.

SO ORDERED.