**AYNESWORTH, Anne LaGrange, Hambleton, Kimberly Ann, Richards, Penelope Hight, Wood, Barbara, McDonald, Elizabeth Candace, Overton, Carolyn Panter, and Weaver, Mary M., et al., Plaintiffs,**

v.

**BEECH AIRCRAFT CORPORATION; Pratt & Whitney Canada, Inc., a subsidiary of United Technologies Corporation; Pratt & Whitney Aircraft of Canada, Ltd.; United Aircraft of Canada, Ltd.; TRW, Inc., d/b/a Hartzell Propeller Products Division: Hartzell Propeller, Inc.; Woodward Governor Co.; Texas-Aero, Inc.; Riteway Radio, Inc.; Rockwell International Corporation; Rockwell-Collins International, Inc.; and Mitchell Industries, Inc., Defendants.**

No. W–84–CA–208.

United States District Court,
W.D. Texas,
Waco Division.

March 11, 1985.

R. Doak Bishop and Kim J. Askew, Hughes & Hill, Dallas, Tex., Wayne Fisher, Fisher, Gallagher, Perrin & Lewis, Joseph D. Jamail, Jamail & Kolius, Houston, Tex., Broadus Spivey, Spivey & Grigg, P.C., Austin, Tex., Lyndon Olson, Olson, Stem, Farr & Buenger, Waco, Tex., for plaintiffs.

Charles McGregor, McGregor & White, Waco, Tex., Richard H. Caldwell, Mayor, Day & Caldwell, Houston, Tex., Jim E. Cowles, Cowels & Thompson, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

WALTER S. SMITH, Jr., District Judge.

This matter is before the Court on Plaintiffs' Motion to Remand an action removed to this Court by Defendant Beech Aircraft on January 2, 1985. After reviewing the excellent briefs and responses filed by counsel for both sides, and having heard oral arguments presented on the issue of remand, the Court is of the opinion that the motion to remand should be granted for the reasons set forth below.

## I. FACTUAL SUMMARY

The present case is the result of the consolidation of two cases originally filed in the 74th Judicial District Court of McLennan County.[1] These two suits arose from an airplane crash on May 5, 1982, which took the lives of seven men. Both suits involved causes of action based on the negligence and strict liability provisions of the Texas Wrongful Death Statute.[2]

The original actions named Beech Aircraft Corporation (a Delaware corporation whose principal place of business is Wichita, Kansas) and Texas-Aero, Inc. (a Texas corporation) as defendants. All plaintiffs are Texas citizens and residents. Prior to trial, Defendant Beech filed third-party actions against Riteway Radio, Inc., and Mitchell Industries, Inc., both of which are Texas corporations. Plaintiffs subsequently also added these two corporations as defendants. Trinity Universal Insurance Company (a Texas Corporation) intervened in this action.

Trial commenced on October 2, 1984, in the State District Court. After approximately ten weeks of testimony and evidence, the case was submitted to the jury for its deliberations and verdict. On December 6, 1984, upon motion of Defendant Beech, a mistrial was declared after the jury remained deadlocked for several days.[3] On December 18, 1984, Beech filed a petition for removal of the case to this Court. None of the remaining defendants joined in

---

1. "*Aynesworth, et al. v. Beech Aircraft Corporation, et al.,*" Cause Number 83–577–3, filed on February 23, 1983 and "*Weaver, et al. v. Beech Aircraft Corporation, et al.*" Cause Number 83–779–3, filed on March 16, 1983.

2. TEX.CIV.CODE ANN. § 4671, et seq. (Vernon 1940 and Supp.1941 to 1985.)

3. A new trial was scheduled for June 10, 1985.

the removal action. Plaintiffs filed a motion to remand this cause on January 2, 1985, challenging the removal action. This Court held a hearing on February 12, 1985, to resolve the question of whether the action was properly removed.

## II. REMOVAL

The statute providing for removal on the basis of diversity of citizenship reads, in part as follows:

[A]ny other such action [other than that based on federal question] shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action was brought.

28 U.S.C. 1441(b).

Removal under this statute must satisfy both the requisites of a $10,000 amount in controversy and diversity of citizenship. The amount in controversy in this cause well exceeds the $10,000 minimum required by the statute. Therefore, the Court must ascertain whether there exists diversity of citizenship for this cause to be properly removed.

 When removal is predicated on diversity of citizenship, the diversity must exist both at the time the original action is filed in state court and at the time removal is sought. Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction, § 3723 (1976). When viewing the alignment of parties at the time the original state action was filed, it is obvious that no diversity existed since plaintiffs and all defendants, except Beech Aircraft, are citizens and residents of the State of Texas.

"However, diversity is tested only at the time of removal if such removal is premised on the plaintiff's voluntarily dropping the non-diverse defendant, although diversity did not exist among the parties at the commencement of the state court action." *Heniford v. American Motors Sales, Corp.,* 471 F.Supp. 328, 334 (D.S.C.1979). Therefore, the Texas defendants must have been dropped from the state court action if removal is proper. Beech claims that the

Texas defendants were dropped from the suit during closing arguments of the state trial when plaintiffs' counsel abandoned any claim against the Texas defendants and asked the jury to return a verdict solely against Beech. If the plaintiffs did, in fact, abaondon their claims against the Texas defendants, removal could be proper on the basis of diversity of citizenship. *See Heniford, supra.*

Alternatively, Beech asserts that the resident defendants are merely nominal defendants which must be realigned with the plaintiffs and their formal joinder in the petition for removal is not necessary.

 All defendants must join in the removal petition. 28 U.S.C. § 1446(a). However, formal or nominal parties are excluded from this requirement. *Tri-Cities Newspapers, Inc., v. Tri-Cities Pressman & Assistants Local 349,* 427 F.2d 325, 327 (5th Cir.1970). If the resident defendants are found to be nominal parties, then the petition for removal would be proper on this basis.

### A. Realignment

"Before determining removability under Section 1441(b) on the basis of diversity of citizenship, the Court will realign the parties according to their true interest, as it would were the case brought into federal court originally." *Heniford v. American Motors Sales, Corp., supra* at 328, *citing* Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction, § 3723 (1976). The Supreme Court set forth the test for determining the proper alignment of parties in diversity cases in the case of *Indianapolis v. Chase National Bank,* 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941), stating:

To sustain diversity jurisdiction, there must exist an "actual" "substantial" controversy between persons of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs

and who defendants. It is our duty, as it is that of the lower Federal Courts to "look beyond the pleadings and arrange the parties according to their sides in the dispute."

Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary "collision of interest" exist, is therefore, not to be determined by mechanical rules. It must be ascertained from the "principle purpose of the suit" and the "primary and controlling matter in dispute."

314 U.S. 63, 69–70, 62 S.Ct. 15, 16–17, 86 L.Ed. 47.

The principal purpose of this lawsuit is to hold liable the parties whose negligence was responsible for the resulting airplane crash. Plaintiffs alleged the crash was caused by a malfunction in the plane itself from either the propeller or the autopilot systems. The claim that the propeller system malfunctioned was asserted against Defendants Texas-Aero, Inc. (the owner and lessor of the plane) and Beech (the manufacturer of the aircraft). The autopilot system malfunction theory was asserted against Defendants Riteway Radio, Inc., and Mitchell Industries, Inc. (the Texas resident defendants).

■ Resident defendants are formal or nominal parties only if there is no cause of action or claim for relief stated against them by anyone. *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell,* 521 F.Supp. 1046, 1048 (S.D.N.Y.1981). The Fifth Circuit has declared the test of whether a party is a nominal one to be "if his role in the law suit is that of a depository or stakeholder . . . ." *Tri-Cities, supra* at 327, *quoting Colman v. Shimer,* 163 F.Supp. 347, 350 (W.D.Mich.1958). The determination of whether a named defendant is a nominal party must depend on the facts of each case. *Tri-Cities, supra* at 327.

■ The Court finds that the resident defendants are not nominal parties in this cause. Their interests are much greater than that of a "depository" and "stakeholder." Each of the Texas defendants is subject to having a verdict rendered against it,

mandating payment of many thousands of dollars to the plaintiffs. To be sure, plaintiff's stronger theory seems to dictate recovery from Beech primarily, but this is not reason enough to classify the other defendants as nominal parties. The fact that one defendant may be entitled to indemnity from another should they be found liable does not justify being termed a nominal party. "That one defendant may benefit should plaintiff prevail against another defendant, does not provide a sufficient basis for realignment." *Irving Trust Co. v. Century Export & Import, S.A.,* 464 F.Supp. 1232 (D.C.N.Y.1979).

For these reasons, this court does not align the parties in a fashion different from that at trial. The Court finds the defendants, the true parties of interest, to be Beech, Texas-Aero, Inc., Riteway Radio, Inc., and Mitchell Industries, Inc. Defendants Texas-Aero, Inc., Mitchell Industries, Inc., and Riteway Radio, Inc. did not join in the petition for removal as required by 28 U.S.C. 1446(a). The Court finds the petition for removal to be improper based on Beech's claims that the defendants were nominal parties.

The Court will now proceed to answer the question of whether the plaintiffs abandoned their claims against the resident defendants.

*B. Abandonment*

■ If the plaintiff voluntarily dismisses, discontinues, or in any way abandons, the action as to the resident joint defendant, the cause then becomes removable, and may, upon prompt action, be removed by the non-resident defendants who have been served. *Stamm v. American Telephone & Telegram Co.,* 129 F.Supp. 719 (W.D.Mo.1955); *Heniford, supra* at 334 (citations omitted).

In support of the abandonment claim, Beech cites the following excerpts from plaintiff's closing arguments:

No longer is there any issue or dispute as between the plaintiffs and Beech as to whether it was a malfunction or defect.

Beech on the one hand says the malfunction or defect was the result of some autopilot malfunction which caused Col. Weaver to get dizzy when he got in the clouds, which caused this pilot of some 7,500 hours to then lose control of the aircraft and crash the airplane and kill himself and his six passengers.

We say that the evidence clearly demonstrates that's not the case. The evidence clearly demonstrates this aircraft crashed as the result of the malfunction of the propeller system, the right propeller, the right propeller blade system, and that's what the evidence clearly demonstrates, and that's what I want to discuss at some length with you this morning.

Petition for Removal, Exhibit D, Opening Final Argument of Wayne Fisher at 4.

Ladies and Gentlemen of the Jury, I then suggest that from the evidence, Special Issue # 7, "Was the autopilot or its components defective?" I believe that even though Beech sued the autopilot people, and if you conclude that the autopilot was, in fact, defective, and the cause of this, we expect to receive that and hopefully receive a judgment against the autopilot people in this case.

But I believe in all honesty and integrity, I believed that from the evidence, that should be answered, "No", that it was not defective. Why? Because the evidence is the propeller system is what caused the airplane to crash and is the thing which set into motion the events that you are asked about back in Special Issues 1, 2, 3 & 4. I think you should answer "No" to Special Issue # 7, "No, that it was a producing cause."

These issues—Was Texas Aero and Riteway Radio Company negligent? Again from the evidence—Where is the evidence that Texas Aero was negligent in this case and caused this airplane to crash? What did it have to do with the propeller system malfunction?

Petition for Removal, Exhibit D, Opening Final Argument of Wayne Fisher at 107.

But I also believe in the integrity of the judicial system and that lawyers, as officers of the Court, have an obligation to not stand in front of juries and argue something, just to be arguing, if it has no basis and fact. I see no basis and fact under this evidence for any answer other than the percentage fault was 100% Beech Aircraft Corporation, Zero Mitchell, Zero Riteway, Zero Texas Aero, Pratt and Whitney, Hartsell, Woodward-Weaver because ladies and gentlemen of the jury, I respectively suggest to you your choice today is: Was there a propeller malfunction?

If you believe, on the other hand, that, in fact, it was the autopilot, instead of the propeller malfunction, if you disregard the secondary low pitch warning light and the stop leading into deformation of the vertical tail, disregard Mr. Wetzler's findings that he laboriously labored over an order to explain to you, then you have to answer differently. But I believe from the evidence, from the evidence, because there is no evidence that anybody other than Beech Aircraft Corporation was a responsible party for this malfunctioning propeller system.

Mr. Jamail asked repeatedly these witnesses over and over again, that sometimes I know its repetitious and boring to hear these questions asked over and over again. But the reason for it is at this stage in the case, they were asked: Is it Beech's responsibility 100%? Every witness responded "Yes, it's Beech's 100% responsibility as the airplane manufacturer. They're the ones responsible for this propeller system." And that why I'm suggesting here that Special Issue # 15, from the evidence—and all this is is suggestion—you may choose to disregard it and answer it completely differently. That is certainly your prerogative.

Petition for Removal, Exhibit D, Opening Final Argument of Wayne Fisher at 110 and 111.

Also, Beech cites from the opening final argument of Joe Jamail as follows:

I believe Issues 7–14 should be answered "No". Mr. Fisher has told you, we had to sue. They forced me to do that because I didn't know what Beech knew about those people. And in order to pro-

tect all of these people, we got together and they forced this on us, so we could protect those children's rights, and those women's rights and those parent's rights.

But as I've seen this evidence unfold, I think in justice and in fairness, Issues 7–14, should be answered "No".

Fifteen should be answered, "100% Beech."

Petition for Removal, Exhibit D, Opening Final Argument of Joe Jamail at 11.

■ The primary consideration in determining whether Plaintiff has abandoned a claim against a defendant is whether or not the Plaintiffs' act in abandonment was voluntary. *Stamm v. American Telephone & Telegraph Co.*, 129 F.Supp. 719 (W.D.Mo. 1955); *Heniford, supra* at 335. "The technicality of how plaintiff's intention is expressed is of no moment—it is the expression of the intent by plaintiff which makes the case removable." *Erdey v. American Honda Co.*, 96 F.R.D. 593 (N.D.La.1983).

Beech relies extensively on the *Heniford* case to support his abandonment claim. That case similarly involves statements made in closing arguments which the Court held to be an abandonment of plaintiff's claims against the sole resident defendants. The abandonment occurred in the following remarks made by Mr. James P. Stevens, Sr.:

Well, let's look a little bit further at Ralph. You know—and look here, don't give a verdict against Ralph. We're not actually suing Ralph because we found out now—found out when this case came on, that Ralph was telling the truth by the records in this particular case

\* \* \* \* \* \*

I don't want you to give a verdict against Ralph Cooke. No, we don't want, a verdict against that, because we have now determined that this man is telling the truth and he has all along ...

*Heniford, supra* at 332.

The Court found an expressed announcement by plaintiffs to abandon their claim against the defendant, Ralph Cooke, when counsel directed the jury not to return a verdict against him. After the abandon-ment had occurred, and there no longer remained any actual, substantial controversy between the plaintiffs and defendant, Ralph Cooke, the Court aligned Mr. Cooke with the plaintiff for purposes of determining diversity of citizenship. Accordingly, the Court, found removal to be proper in this case since diversity of citizenship did exist.

■ This Court, therefore, must focus on whether the plaintiff's conduct in this case evidenced an express intention by the plaintiffs to abandon their claims against the resident Texas defendants. It is apparent from the statements in closing arguments that plaintiffs concentrated primarily on urging the jury to return a verdict based upon the propeller malfunction theory. Even though plaintiffs strongly urged that Beech should be found to be solely responsible, this Court cannot find that they entirely and expressly abandoned their claims against the Texas defendants. It is clear from reviewing the statements of counsel that plaintiffs offered an alternative to the jury—that of finding the Texas defendants liable on either the autopilot malfunction theory or the propeller system malfunction theory. At no time did plaintiffs state that they absolutely did not want the jury to return a verdict against the Texas defendants. Although Mr. Wayne Fisher admitted that he saw no basis under the evidence for returning a verdict against the Texas defendants and that Beech should be found to be 100% responsible, he further stated that the jury could find that the autopilot was the cause of the malfunction and, if so, they should return a verdict upon that basis. The Court finds that plaintiffs were willing to accept a verdict on the autopilot malfunction theory even though they did not agree the evidence showed it was the cause of the crash. Therefore, there was no express, voluntary abandonment of claims against the Texas defendants. The *Heniford* case is distinguishable from the present case. In *Heniford*, "plaintiffs extinguished their claim against the resident defendant in explicitly instructing the jury not to return a verdict against him." *Heniford, supra* at 335. Counsel in *Heniford* did not offer the jury

an alternative basis for returning a verdict against defendant, Ralph Cooke, as counsel did in the present case by allowing the jury to return a verdict on either of two theories.

"The paramount consideration in determining whether the dropping of the resident defendant as an adverse party renders a case removable is if such resulted from the *voluntary* act of the plaintiff." *Heniford, supra* at 335 (citations omitted). This Court does not find that the plaintiffs voluntarily dropped their claims against the resident defendants.

Beech also supports its abandonment argument by urging that the plaintiffs' evidence concentrated solely on the propeller system malfunction. However, this court notes that plaintiffs' trial strategy could have been to present evidence primarily on the propeller malfunction, knowing (or hoping) that Beech would present substantial evidence on the autopilot theory. Therefore, plaintiffs were allowed to primarily focus on Beech's liability in manufacturing a defective propeller system. The fact that Beech presented the evidence, or most of the evidence, on the autopilot theory does not amount to a voluntary dismissal of the plaintiffs of a claim on this basis.

The Court does not find that abandonment occurred in this case and refuses to align the resident defendants with the plaintiffs. No diversity jurisdiction exists in this case and it was therefore improperly removed to this court.

### C. Waiver

■ Plaintiffs urge that defendant Beech waived its right to removal by waiting until jury deliberations had ended in a mistrial before filing its petition for removal. Beech replies that it was required to wait until a transcript of the closing arguments was completed for two reasons. First, that 28 U.S.C. § 1446(b) requires a written document which constitutes notice that removal is allowable; and second, that before it had the transcript it could not file a petition for removal in compliance with F.R.C.P. 11. This Court agrees with neither such argument because Section 1446(b) does not require a written pleading creating the right to remove, *Heniford, supra;* and it is not conceivable that Beech's attorneys did not immediately recognize the asserted abandonment by Plaintiffs' attorneys. To decide otherwise, this Court would have to assume that Beech's attorneys did not listen to Plaintiffs' argument. Because of the calibre of Beech's attorneys, as observed by this Court, no such assumption can be made.

■ The right to remove pending litigation to federal court is an important right; but it can be waived. A defendant simply cannot.... "experiment on his case in the state court, and, upon an adverse decision, then transfer it to the Federal court." *Rosenthal v. Coates* 148 U.S. 142, 13 S.Ct. 576, 37 L.Ed. 399 (1893); *Haun v. Retail Credit Co.* 420 F.Supp. 859 (W.D.Pa.1976); *In Re 73rd Precinct Station House,* 329 F.Supp. 1175 (E.D.N.Y.1971)

■ It seems enlightening to consider Beech's position had the jury reached a decision unfavorable to Beech. Could Beech then properly remove its case to federal court and avoid a state court judgment? This Court holds that in that event Beech would have waived its right to remove by failing to immediately advise the state court of its intention and to immediately file its petition for removal; so too has Beech waived its right to remove in the present case by "experimenting with its case in state court" to the extent of waiting until a mistrial was declared before seeking removal.

### D. Attorneys' Fees

■ Plaintiffs asked this Court to award attorneys' fees and court costs against Beech, based on its bad faith removal of this action. An award of attorney fees is appropriate in cases in which a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 257–259, 95 S.Ct. 1612, 1621–1622, 44 L.Ed.2d 141 (1975). *See also Peltier v. Peltier,* 548 F.2d 1083 (1st Cir. 1977). Attorneys' fees have also been awarded when a petition for removal had

no "substantial basis." *Kasprowicz v. Capital Credit Corp.*, 524 F.Supp. 105 (E.D.Mich.1981). Plaintiffs seek attorneys' fees even if the Court finds no bad faith on the part of Beech on the basis that the petition for removal is meritless. The court finds the abandonment theory has no support in the record, the Texas defendants were not nominal parties, and that Beech's petition for removal is without a substantial basis. However, this Court declines to award attorneys' fees in this cause because Beech did not act in bad faith, and unique issues of at least arguable merit were presented by Beech. Defendant Beech Aircraft Corporation shall be assessed all costs and disbursements incurred by the plaintiffs by reason of these removal proceedings. Accordingly,

IT IS, THEREFORE, ORDERED that plaintiff's motion to remand this cause to the 74th Judicial District Court is GRANTED. Beech Aircraft is directed to pay all costs and disbursements incurred by the plaintiffs by reason of the removal proceedings.