Ginnie G. DAVIS, Plaintiff-Appellee,

v.

VESLAN ENTERPRISES, et al.,
Defendants-Appellees,

v.

McGRAW–EDISON COMPANY, et al.,
Defendants-Appellants.

No. 84–1925.

United States Court of Appeals,
Fifth Circuit.

July 15, 1985.

Michael A. Wash, Austin, Tex., Byron L. Gregory, Steven H. Hoeft, Chicago, Ill., for McGraw-Edison Co., et al.

Glen M. Wilkerson, Cindy Saunders, Austin, Tex., for Mack Trucks, Inc.

Kidd, Whitehurst & Harkness, Thomas R. Harkness, Alice Oppenheim, Mack Kidd, Austin, Tex., for Davis.

Brown, Maroney, Rose, Barber & Dye, Walter H. Mizell, Thomas M. Bullion, III, Austin, Tex., for Veslan Enterprises and Collins.

Before REAVLEY, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

Defendants-Appellants McGraw-Edison Company, Wagner Electric Corporation, Wagner Electric Sales Corporation, and Edison International, Inc. (hereinafter referred to as "Wagner") appeal from the district court's imposition of sanctions under Fed.R.Civ.P. 11 after Wagner's attempted removal of a state court proceeding. Having carefully examined Wagner's arguments and finding no error, this Court affirms the district court's orders imposing sanctions.

## I. FACTS AND PROCEDURAL HISTORY

### A. *Proceedings in State Court*

On December 31, 1981, Wayne Ramirez was killed in Austin, Texas, when his pickup was struck by a tractor-trailer owned by Veslan Enterprises (Veslan) and driven by David Collins. It was undisputed that the tractor-trailer being driven by Collins had run a red traffic light at the time of the collision. The driver Collins, however, claimed that the brakes had failed.

On January 18, 1982, Ginnie Davis, a Texas resident and the mother of the decedent Wayne Ramirez, filed suit in Texas state court against Veslan and Collins, both residents of Texas. On November 12, 1982, Veslan and Collins filed third-party actions against Mack Trucks, Inc. (Mack), which built the tractor, and defendant-appellant Wagner, who manufactured and supplied Mack Trucks with the metering valve in the tractor's brake system. On January 3, 1983, plaintiff Davis added Mack and Wagner as defendants.[1]

On January 27, 1984, after discovery, plaintiff Davis amended her interrogatory answers by letter, stating that plaintiff Davis and the in-state defendants were in agreement that the primary cause of the accident was the Wagner brake valve. Plaintiff Davis maintained this position throughout the state court proceedings.

---

**1.** Although both Mack and Wagner were of diverse citizenship from plaintiff Davis, complete diversity was lacking because of the presence of the in-state defendants Veslan and Collins. In this opinion, the use of the term "in-state defendants" will refer to Veslan and Collins; "diverse defendants" will refer to Mack and Wagner.

The case proceeded to trial in state court on May 16, 1982. A lengthy trial, spanning over three weeks, followed. In closing argument, plaintiff Davis maintained her position that the primary cause of the accident was the defective valve and concentrated on the culpability of the diverse defendants. The diverse defendants (Mack and Wagner) argued that the driver Collins had been at fault. Record Vol. II at 33. The in-state defendants (Veslan and Collins) argued, *inter alia,* that Davis should not recover the amount of damages she sought. *Id.* at 29.

After the jury retired for its deliberations, plaintiff Davis settled with Mack. While the jury was deliberating, the in-state defendants, Veslan and Collins, also attempted to negotiate a settlement with plaintiff Davis, but no settlement was reached. On June 15, 1984, the jury returned a verdict in favor of Davis for $1 million as compensatory damages and $12 million as punitive damages against Mack and Wagner. The driver. Collins and his employer Veslan were exonerated from fault.

On June 18, 1984, plaintiff Davis filed a motion for judgment on the verdict and the hearing thereon was·set for June 21, 1984. On June 20 at 4:55 p.m. (the day before the hearing was to be held), counsel for Wagner filed a petition for removal to federal court. As a result of the filing of the removal petition, the state court could not enter the judgment until the case was remanded. 28 U.S.C. § 1446(f). Moreover, since Texas law at the time of the removal petition provided that interest could run only from the date of the entry of judgment, Wagner stood to derive a significant financial benefit from delaying entry of the judgment even if the effort was unsuccessful.

### B. *Proceedings in Federal Court*

In the petition for removal, counsel for Wagner argued that plaintiff Davis had abandoned her claim against the Texas defendants (the driver Collins and his employer Veslan) in her closing argument to the jury, leaving only her claims against the diverse defendants.[2] Wagner alleged that it could petition for removal at this late juncture because Davis' abandonment of claims against the Texas defendants only became apparent at the time of the closing argument to the jury.

In their Motion for Remand or for Alternative Relief, plaintiff Davis and defendants Veslan, Collins, and Mack argued that the case should be remanded to state court and that sanctions should be imposed against Wagner. The attorneys submitted affidavits estimating their time spent on the case. Hearing was set for July 9, 1984.

At the hearing, the federal district court judge heard oral argument from counsel as to whether the case should be remanded. On July 10, 1984, the district court entered its order remanding the case back to state court. The district court also held that sanctions should be applied under Fed.R. Civ.P. 11, stating:

> This Court further finds that the Petition for Removal was filed in bad faith and has resulted in the unnecessary delay in the entry of a judgment in the state court proceedings and that for that reason, said pleading was signed on behalf of [Wagner] in violation of Rule 11 of the Federal Rules of Civil Procedure. This Court finds and imposes appropriate sanctions as provided in Rule 11 and 28 U.S.C. 1447(c) and hereby ORDERS that attorneys fees for the Respondents in contesting this Petition for Removal and filing their Motion for Remand as well as all accrued interest on the delay in the entry of the State Court Judgment are hereby granted.

---

**2.** Indeed, Wagner's petition for removal stated, "In final summation and argument to the jury, counsel for Ginnie G. Davis told the jury that Veslan Enterprises and David Addison Collins were not guilty of any conduct which was a contributing cause to the vehicular collision made the basis of her suit." Record Vol. I at 225. After carefully examining plaintiff Davis' closing arguments to the jury, one finds that no such statement was made. *See infra* at 5501–5500.

Counsel for Respondents are hereby ordered to file Affidavits with the Court setting out the amount of reasonable attorneys fees as well as the amount of accrued interest resulting from the delay in the entry of the State Court Judgment. Counsel for Petitioner shall be given an opportunity to respond to such Affidavits before the final order of this Court on the question of the amount of appropriate sanctions is entered.

Record Vol. I at 26–27. Counsel for Davis and for defendants Veslan and Collins filed further affidavits regarding attorney's fees and the amount of interest that was lost as a result of the delay in entering the state court judgment. After receiving no response from counsel for Wagner for nearly two months after such affidavits were filed, the district court entered sanctions in the total amounts of $5,855 for attorney's fees and $32,988.99 as the amount of lost interest because of the delay in entering the state judgment.[3] Wagner timely appeals the district court's imposition of sanctions.

## II. IMPOSITION OF SANCTIONS

Defendant-appellant Wagner contends that the district court abused its discretion in its decision to impose sanctions and in the amount of the sanctions awarded. Both contentions are examined in turn.

A. *Whether the District Court Abused its Discretion in Imposing Sanctions*

■ After examining counsels' written statements and briefs and after hearing oral arguments, the federal district court determined that Wagner's petition for removal was without merit and filed in bad faith. The federal district court imposed sanctions under Rule 11. Record Vol. II at 35. Rule 11 provides for an "appropriate sanction" in that,

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated.... *The signature of an attorney or party constitutes a certificate by him that* he has read the pleading, motion, or other paper; that *to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,* and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11 (emphasis added). The comments to the 1983 amendments to Rule 11 state that the rule "stresses the need for some prefiling inquiry into both the facts and the law. The standard is one of reasonableness under the circumstances." Moreover, the comments to the amendments instruct, "This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation."[4] The comments emphasize that

---

3. Counsel for Mack filed no further affidavit and was not awarded attorney's fees. After the case was remanded back to state court, judgment was entered on July 10, 1984, in favor of plaintiff and against Wagner for approximately $6.5 million.

Wagner sought a writ of mandamus from this Court to attempt to prevent the case from being remanded to state court. The petition for writ of mandamus was denied. Counsel for Davis and the resident defendants were granted costs and attorney's fees under Fed.R.App.P. 38.

4. Courts have noted the impact of the addition of this objective standard compared to the purely subjective standard under the pre-amendment rule. While former Rule 11 read that the signature acts as a certificate by the attorney "that to the best of his knowledge, information, and belief there is good ground to support [the motion]," the new Rule adds that the attorney's certification must be formed "after reasonable inquiry." The Second Circuit has recently noted that the inclusion of this reasonableness standard reflects the intent of the drafters that sanctions shall be imposed by trial courts "where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.

while the amendments are "not intended to chill an attorney's enthusiasm or creativity," the district court's determination to impose sanctions may depend on "whether the pleading, motion, or other paper was based on a *plausible view* of the law."[5] Fed.R.Civ.P. 11 (comment to 1983 amendment) (emphasis added). *See generally Elliot v. Perez,* 751 F.2d 1472 (5th Cir.1985) (interpreting Rule 11 in context of deciding specificity required for pleading in cases involving judicial immunity). In determining whether the district court erred in imposing such sanctions, this Court's review is limited to determining whether the district court abused its discretion. *Warren v. Reserve Fund, Inc.,* 728 F.2d 741, 748 (5th Cir.1984).[6]

Wagner argues that the district court abused its discretion in imposing sanctions in that its petition for removal was "warranted by existing law or a good faith argument for the extension ... of existing law." *See* Fed.R.Civ.P. 11. Wagner's petition for removal was based on diversity jurisdiction. While the presence of the Texas defendants clearly prevented removal based on diversity because of the lack of complete diversity of citizenship, *see Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), Wagner argues that its counsel reasonably believed that plaintiff Davis' arguments to the jury abandoned her claims against the Texas defendants and made the case removable to federal court. Wagner states that it based

this belief on the district court opinion in *Heniford v. American Motors Sales Corp.,* 471 F.Supp. 328 (D.S.C.1979), *appeal dism'd,* 622 F.2d 584 (4th Cir.1980).[7]

In *Heniford,* plaintiff's counsel stated, "I don't want you to give a verdict against Ralph Cook [the resident defendant]. No, we don't want a verdict against [him] because we have now determined that this man is telling the truth and he has all along...." *Id.* at 332. The *Heniford* court held that this closing argument effectively and expressly dismissed the resident defendant from the case and removed any controversy between the plaintiff and the resident defendant, thus making the case removable to federal court, even though no formal order of dismissal had been entered by the state court. *Id.* at 333.

Even assuming the persuasive value of the *Heniford* opinion—a question this Court need not reach here—plaintiff Davis' arguments to the jury plainly failed to create the abandonment of claims against the Texas defendants that counsel for Wagner related in its removal petition.[8] Wagner's contention that Davis abandoned her claims against the resident defendants rested on statements purportedly made by Davis' counsel that it was "inconceivable" that the resident defendants caused the accident and that his imagination was "boggled" by the idea that the resident defendants might be responsible. Wagner Brief at 11. When the use of these words is examined in context, however, it becomes evident

---

1985). *See also Rodgers v. Lincoln Towing Service,* 596 F.Supp. 13, 27 (N.D.Ill.1984).

**5.** In *Nemeroff v. Abelson,* 620 F.2d 339 (2d Cir. 1980), the court used a "colorable claim" standard in determining that the district court abused its discretion in imposing sanctions against a plaintiff and his attorneys under Rule 11. *See id.* at 348, 350. The court stated that a claim is colorable "when it has some legal and factual support, considered in light of the reasonable belief of the person making the claim." *Id.* at 348. While there may be little difference between a "colorable claim" and a "plausible view," the comments to the 1983 amendments propose that the amended rule should lead to the imposition of sanctions in a greater range of circumstances than under the *Nemeroff* standard.

**6.** The district court also noted that imposition of sanctions was allowed under 28 U.S.C. § 1447(c). This Court has noted that sanctions may be imposed for a removal petition filed in bad faith. *See Muirhead v. Bonar,* 556 F.2d 735, 736 (5th Cir.1977) (per curiam).

**7.** Wagner makes no argument that diversity existed simply because the Texas defendants would have benefited by Davis' prevailing against the nonresident defendants. Indeed, courts have routinely rejected such an argument as a basis for diversity jurisdiction. *See Syms, Inc. v. IBI Security Service, Inc.,* 586 F.Supp. 53, 56 (S.D.N.Y.1984).

**8.** *See* n. 2 *supra.*

that no such abandonment of claims against defendants Veslan and Collins occurred. Rather, plaintiff Davis' closing arguments to the jury continued her basic theme at trial that, while the negligent conduct of the driver Collins may have also led to the accident, the primary cause of the accident was the defective brake. For instance, counsel for plaintiff Davis argued:

> There can be more than one contributing cause to [a] collision. Maybe when Mr. Collins came down toward this intersection, he applied his brakes, had this condition of no brakes, this condition of honking, and he panicked and [let] off on his brakes and tried to get through the intersection. Or maybe he stayed on it all the way trying to get his truck to stop. But, either way, when he first applied his brakes, and had that honk, had that sound, and didn't have brakes, that was a producing cause of this accident.
>
> .     .     .     .     .
>
> I don't know what Mr. Collins did after his brakes failed. Maybe he decided to run that red light. Maybe he should have applied his hand control and didn't ... but I'm convinced he had a brake failure.

Record Vol. III at 26, 31. Counsel for Davis also stated:

> What about Mr. Collins? Maybe he just didn't apply his brakes on the night of the accident, which boggles my imagination. If he saw a car pulling out in front of him, surely he would apply his brakes and go for his brakes. Just seems inconceivable to me.
>
> But let's talk about it for a second.... [T]he only possible explanation for this accident is that he had a brake failure on the occasion in question. The fact that

this might be a dangerous intersection, the fact that the yellow light might not have been functioning exactly right rather than—3.5 as opposed to four seconds, the fact that the red light might not have had a continuous red, all that's a smoke screen. Because the Judge asked you in connection with all of these issues whether it was a proximate cause or a producing cause. He doesn't say the only cause. There can be a lot of causes. Maybe the yellow was a little short on this occasion. Maybe that was one of the contributing causes. But I suggest to you, on design defect, on brake defect, on failure to warn, on failure to test, on misrepresentation, all of those should be answered "Yes, a producing cause," not the only cause of the accident.

*Id.* at 41–42. This Court has read plaintiff Davis' closing argument with care and has found no statement which could reasonably be construed as abandoning her claim against the resident defendants.

It should also be noted that the resident defendants, Veslan and Collins, did not draw solace from the alleged abandonment of claims against them. Indeed, the resident defendants continued to attempt to reach a settlement with Davis. At the removal hearing, counsel for Veslan and Collins also noted the paradox that the retrial of Davis' claim in federal court (which Wagner effectively requested in its removal petition) was impossible since any retrial would have involved Veslan's and Collins' presence as nondiverse defendants. Record Vol. II at 31.[9]

Counsel for Wagner also argues that its attempted removal was "not interposed for any improper purpose, such as to harass or to cause unnecessary delay" under the

---

**9.** The Court's conclusion as to the lack of merit by Wagner's petition for removal is further substantiated by a recent district court order rejecting a similar removal attempt. *Aynesworth v. Beech Aircraft Corp.,* 604 F.Supp. 630 (W.D.Tex. 1985). Although the district court in *Aynesworth* exercised its discretion to deny a request for attorney's fees, *id.* at 637–38, the closing

arguments to the jury in that case came much closer to that of *Heniford.* Indeed, counsel for plaintiffs in *Aynesworth* "admitted that he saw no basis under the evidence for returning a verdict against the Texas defendants and that Beech [the diverse defendants] should be found to be 100% responsible." *Id.* at 636.

terms of Rule 11.[10] Wagner's argument does not persuade. Under the existing state of law in Texas at the time of the removal petition, Wagner's petition for removal delayed entry of the state court judgment and would have saved Wagner a substantial amount of interest if sanctions had not been imposed. This circumstance, coupled with the lack of plausibility of Wagner's argument, made it reasonable for the district court to infer that one purpose of the removal petition was to delay entry of the state court judgment.

In short, Wagner's arguments fail to convince this Court that the district court abused its discretion in imposing sanctions under Rule 11. While we are not without sympathy for counsel's claim that excessive use of Rule 11 sanctions would tend to chill the creativity of lawyers,[11] it cannot be said that the district court abused its discretion in determining that the instant case was an appropriate one for the imposition of sanctions.

### B. Whether the District Court Abused its Discretion as to Amount of Sanctions

■ Wagner also challenges the district court's use of an interest calculation in determining the amount of sanctions imposed under Rule 11.[12] Wagner bases his contention on statements, drawn from the context of cases different from the instant one, that interest does not act as a penalty. Counsel for Wagner also contends that the use of such an interest calculation is contrary to the allowance of "expenses" as a sanction under Rule 11.

■ Rule 11 provides for sanctions and states, "If a pleading, motion, or other paper is signed in violation of this rule, the court ... shall impose ... *an appropriate sanction,* which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." The comments to the 1983 amendments propose that the district court's use of sanctions "should discourage dilatory or abusive tactics." In the instant case, Wagner stood to derive a substantial benefit by delaying the entry of the state court judgment since Texas law provided that interest ran only from the date of judgment and not from the date of the verdict.[13] To prevent Wagner from deriving a significant financial benefit from filing its removal petition (and thus to deter future abuses), the district court applied a

---

**10.** It is noted that the terms of Rule 11 state that the signature of an attorney acts as a certificate that the motion "is warranted by existing law or a good faith argument for the extension ... of existing law, *and* that it is not interposed for any improper purpose...." In *WSB Electric Co. v. Rank & File Committee to Stop the 2-Gate System,* 103 F.R.D. 417 (N.D.Cal.1984), the court held that a trial court needs to find only one of these two "prongs" to impose sanctions. Since we reject Wagner's arguments as to both "prongs," we need not reach this question of whether violation of one is sufficient for a district court to impose sanctions.

**11.** For excellent discussions of the amendments to Rule 11, see Rothschild, Fenton, & Swanson, *Rule 11: Stop, Think, and Investigate,* Litigation, Winter 1985, at 13; Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181 (1985).

**12.** Wagner also contends that the district court abused its discretion and violated due process in failing to conduct an evidentiary hearing as to

the amount of attorney's fees. Wagner relies upon *Smith v. Student Non-Violent Coordinating Committee,* 421 F.2d 522 (5th Cir.1969) (per curiam). *Smith,* however, only remanded under the facts of that case for an "appropriate hearing" and did not state that the district court was required to conduct an evidentiary hearing. *Id.* at 524. Further, counsel for Wagner in the instant case was given nearly two months to respond to the parties' affidavits and chose to remain mute. Thus, Wagner fails to persuade that an evidentiary hearing was required. Nor was the district court required to use the detailed analysis set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). *See Hornbuckle v. Arco Oil & Gas Co.,* 732 F.2d 1233 (5th Cir.1984).

**13.** Since the occurrence of the facts relevant to the instant appeal, the Texas Supreme Court has stated that Texas law now provides that prejudgment interest may be recovered for some elements of damages in personal injury cases. *Cavnar v. Quality Control Parking, Inc.,* No. C–3332 (Tex. June 4, 1985).

sanction based on a ten percent rate [14] from June 21, 1984 (the original date for the entry of the state court judgment prior to removal), to July 9, 1984 (the date the district court remanded the case to the state court). Under Rule 11, the district court "has discretion to tailor sanctions to the particular facts of the case, with which it should be familiar." Fed.R.Civ.P. 11 (comments to 1983 amendment). Considering the facts of the case at bar and the particular abuse the district court sought to deter, the district court's use of an interest calculation to tailor the amount of the sanction was most appropriate. We detect no abuse of discretion.

### III. CONCLUSION

Accordingly, the district court's judgment imposing sanctions against defendant-appellant Wagner and in favor of plaintiff Davis and defendants Veslan and Collins is

AFFIRMED.

**14.** This is the minimum interest allowed on a judgment under the Texas Statute. Tex.Rev.Civ. *Stat.Ann. art. 5069–1.05 (Vernon Supp.1985).*