United States Court of Appeals,

Fifth Circuit.

No. 95-10991.

Sandra J. MERRIMAN, Plaintiff-Counter Defendant,

and

Todd A. Smith;  Law Offices of Charles M. Noteboom, Movants-Appellants

v.

SECURITY INSURANCE COMPANY OF HARTFORD, Defendant-Counter Claimant-Appellee

and

Connie Elledge, Defendant.

Dec. 10, 1996.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, and EMILIO M. GARZA and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Todd Smith and the Law Office of Charles M. Noteboom appeal the district court's award of $56,115.63 in Rule 11 sanctions against them.  Having carefully reviewed the record and having found no abuse of discretion, we affirm.

I

For the purposes of this appeal, the course of the litigation is more relevant than the facts of the underlying dispute.  Plaintiff Sandra Merriman was involved in an insurance dispute with Security Insurance Company of Hartford ("Security") arising from the company's denial of coverage under workers' compensation.  More than two years after Security denied Merriman coverage, her lawyers Todd Smith and the Law Offices of Charles M. Noteboom (collectively referred to hereinafter as "Noteboom" or "the firm") filed on Merriman's behalf claims for negligence, gross negligence, violations of the Texas Insurance Code, violations of the Deceptive Trade Practices Act ("DTPA"), and for breaches of Security's duty of good faith and fair dealing under *Arnold v. Nat'l County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987) (*"Arnold"* claim).  In Security's first responsive

pleading, a motion for summary judgment, the company pointed out that the statutes of limitations on all of plaintiff's claims were two years and that they had run before Merriman filed suit.

Undaunted by the expiration of Merriman's claims, Noteboom pressed on with litigation, conducting depositions and discovery. In three separate letters, Security's lawyers warned Noteboom that Noteboom's conduct was sanctionable and that Security would seek Rule 11 sanctions. In the first letter, after pointing out that Merriman's claims were barred, Security's counsel John Skrhak offered Charles Noteboom the following: "If your client will agree to dismiss the above referenced matter with prejudice prior to my client incurring any further attorneys fees in this matter, we will agree not to file any Rule 11 motions with the court. Please advise." In a subsequent letter dated November 23, 1992, Skrhak issued the following ultimatum:

> I arranged for Ms. Elledge's deposition on November 18, 1992, and your office canceled that deposition and contemporaneously served numerous discovery requests, motions for extensions of time and a motion for leave to amend your pleadings to allege new and additional claims which, regardless of the merit of those claims, you should have been aware of at the time you filed your Original Petition. This is to give you notice that if my clients are required to respond to any of these matters then our offer to waive the Rule 11 Motion for Attorneys' Fees will be withdrawn. I have been advised that Judge Means has granted Rule 11 Attorneys' Fees for less egregious conduct than has occurred in this matter....
>
> I realize that you probably now need to save face with your client for filing this frivolous matter and my client solely for that purpose has reluctantly authorized me to offer the sum of $2,500 in return for an Order of Dismissal with Prejudice and a full and complete release of all claims. This offer, together with my offer to waive Rule 11 attorneys' fees will be withdrawn if not accepted by November 30, 1992 at 5:00 p.m. I strongly suggest that you review your file and the factual basis for the allegations in your Original Petition and in your proposed Amended Petition before going forward with this matter.

Merriman and Noteboom refused to settle, however. Security moved for summary judgment and Rule 11 sanctions shortly thereafter.[1] The court granted both motions.

In its order, the court held that all of Merriman's claims were clearly barred by statutes of limitations, except her allegation of breach of good faith and fair dealing under *Arnold*. The court explained that Merriman's *Arnold* claim was also barred, but that because the limitations period for such claims is an emerging area of Texas law, it would not impose sanctions based on that claim. The court ordered sanctions for the filing of the other claims, however, to be paid by Merriman's counsel

---

[1]Because Merriman filed suit before the 1993 amendments to Rule 11, the court awarded sanctions under Rule 11 as modified by the 1983 amendments.

of record and not to be charged to the client. It also ordered Security to submit an affidavit outlining attorneys' fees for the sanctioned claims only.

Skrhak submitted an affidavit stating that his firm had billed $55,084.00 in hourly billing on the case and $7,266.70 in costs and other services, totaling $62,350.70. He stated that it was impossible for him to segregate the costs for each specific cause of action, but attested that the facts Security was required to investigate regarding the *Arnold* claim were the same as those it was required to investigate regarding the frivolous claims. Skrhak concluded that the attorneys' fees would have been the same had Merriman not alleged the *Arnold* claim. Nearly two years after its original order, and without holding an evidentiary hearing on the grant or the amount of sanctions, the court awarded $56,115.63 in attorneys' fees, subtracting 10 percent from Security's sum to account for the unsanctioned *Arnold* claim.

Noteboom appeals the grant of Rule 11 fees on four grounds: (1) the district court's award of sanctions without a hearing violated due process under the Fifth Amendment, (2) the district court abused its discretion by punishing conduct that does not rise to the level of unreasonableness required to justify sanctions under Rule 11, (3) the district court abused its discretion because it did not award the least severe sanction that would serve the purposes of Rule 11, and (4) the district court abused its discretion in awarding Security the fees it incurred answering the meritorious claims as well as the frivolous claims.

## II

We review all aspects of a district court's award of Rule 11 sanctions for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990); *Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 872 (5th Cir.1988) (en banc).

## A

Noteboom first asserts that, in order to comport with the guarantees of due process under the Fifth Amendment, the district court should have provided both a meaningful evidentiary hearing and an opportunity for discovery before awarding such costly sanctions. Although the required

procedures may vary according to the interests at stake in a particular context, *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971), the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)).

In the Rule 11 context, due process demands only that the sanctioned party be afforded notice and an opportunity to be heard. *Boddie,* 401 U.S. at 379, 91 S.Ct. at 786; *Spiller v. Ella Smithers Geriatric Ctr.,* 919 F.2d 339, 346-47 (5th Cir.1990). What constitutes sufficient process depends on the circumstances of each case. *See* Fed.R.Civ.P. 11 advisory committee note (1983 Amendment) ("The procedure obviously must comport with due process requirements. The particular format to be followed should depend on the circumstances of the situation and the severity of the sanction under consideration."). Therefore the question of whether a sanctioned attorney was given sufficient notice and opportunity to be heard involves a fact-intensive inquiry.

The notice required depends on the conduct sanctioned by the court. An attorney who files court papers with no basis in fact needs no more notice than the existence of Rule 11 itself. *Spiller,* 919 F.2d at 346; *Veillon v. Exploration Servs., Inc.,* 876 F.2d 1197, 1202 (5th Cir.1989). However, where a party files papers in court without any basis in *law,* due process requires specific notice of the reasons for contemplating sanctions. *Spiller,* 919 F.2d at 346-47. Such notice may take the form of a personal telephone call, a letter, or a timely Rule 11 motion. *Veillon,* 876 F.2d at 1202. The court awarded sanctions against Noteboom for advancing claims with no basis in law.

In this case, we find that Security's series of letters, ultimata, and motions put Noteboom on notice that Security would seek, and the district court might impose, Rule 11 sanctions. At any time during the pendency of the litigation, and certainly after opposing counsel had specifically suggested it, Noteboom could have reviewed the legal basis for Merriman's claims and taken steps to avoid sanctions. Further, when Security moved for summary judgment and for Rule 11 sanctions, Noteboom again could have avoided reproach by withdrawing the barred claims. In short, we find that Noteboom had ample notice that the court might sanction the firm.

Noteboom also had an adequate opportunity to be heard. Although the district court never conducted an evidentiary hearing on the award or the amount of sanctions, due process does not demand an actual hearing. In Rule 11 cases, the opportunity to respond through written submissions usually constitutes sufficient opportunity to be heard. *Spiller,* 919 F.2d at 347 (suggesting that Rule 11 hearings are preferable, but not mandatory); *see also* Fed.R.Civ.P. 11 advisory committee note (1983 Amendment) ("In many situations, the judge's participation in the proceedings provides him with full knowledge of the relevant facts and little further inquiry will be necessary. To ensure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record.")

The issues in this case are no more complex than those in other cases in which we have upheld district court orders awarding sanctions without a hearing. *See, e.g., Spiller,* 919 F.2d at 347; *Henderson v. Dep't of Pub. Safety and Corrections,* 901 F.2d 1288, 1295 (5th Cir.1990); *Davis v. Veslan Enters.,* 765 F.2d 494, 501 (5th Cir.1985). The question of when various tort causes of action accrue and when Noteboom knew his claims were barred are not so difficult that we can say the district court abused its discretion in not requesting a hearing.

Further, Noteboom never requested a hearing in the two years between the court's grant of sanctions in 1993 and its order setting the amount in 1995. The closest it came to an actual request for a hearing came at the end of its motion for relief from sanctions, in which it suggested that "should the Court have any additional questions which are not adequately addressed in this motion, that a hearing be held with all parties present prior to the awarding of sanctions in this matter." This statement indicates Noteboom's willingness to stand on its motion and the paper record unless the court needed clarification.

The district court did not request such hearing because "all of its questions were adequately addressed in the evidence and arguments before it when it ordered the sanctions." Armed with full knowledge of the relevant facts, the court found parallel proceedings unnecessary. The court's decision not to hold an additional hearing is in keeping with the intent of Rule 11, which cautions in

the advisory committee note that the court should limit sanction proceedings to review of the case record, where possible. Fed.R.Civ.P. 11 advisory committee note (1983 Amendment). Therefore we find that the district court afforded Noteboom constitutionally sufficient opportunity to be heard regarding the imposition of sanctions.

In addition to arguing that the district court's award of sanctions without hearing violated due process, Noteboom also challenges the district court's refusal to conduct a hearing on the amount of the sanctions. We have held that a district court awarding Rule 11 sanctions need not conduct an evidentiary hearing to set attorneys' fees and that it may instead rely on an unopposed affidavit stating fees. *Doyle v. United States,* 817 F.2d 1235, 1237 (5th Cir.) *cert. denied,* 484 U.S. 854, 108 S.Ct. 159, 98 L.Ed.2d 114 (1987). Security's counsel submitted an affidavit setting forth its attorneys' fees within a month of the court's order awarding sanctions. In the almost two years between the court's order awarding sanctions and the court's determination of the amount, however, Noteboom never challenged Security's affidavit detailing attorneys' fees or asked to depose Security's counsel about the reasonableness of the fees. We find that the intervening period provided ample opportunity to be heard on the issue of the amount of sanctions. The court's decision not to conduct a hearing was neither an abuse of discretion nor a violation of due process.

B

Noteboom next asserts that, in three respects, the district court abused its discretion in finding the firm's conduct sanctionable. First, Noteboom argues that Merriman's barred claims represented a good-faith argument for the modification of existing law and therefore were not sanctionable. Rule 11 (as amended in 1983, *see* note 1, *supra* ), provided in part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is *warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,* and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11 (emphasis added). In order to assess whether Merriman's claims represented an argument for change in the law, we must make a brief sojourn into Texas's law of limitations for

insurance claims. Noteboom points to an ambiguity in the law about when a cause of action accrues for *Arnold* claims when the insurer never explicitly denies coverage. Noteboom suggests that this ambiguity might preserve Merriman's good faith and fair dealing cause of action, as well as resurrect other expired causes of action "inextricably intertwined" with the *Arnold* claim.

Noteboom points to a footnote in *Murray v. San Jacinto Agency, Inc.,* which states that, in some cases, the exact date of accrual for good faith and fair dealing claims is a question of fact to be determined on a case-by-case basis. 800 S.W.2d 826, 828 n. 2 (Tex.1990). However, *Murray* 's footnote is less important than its holding: where an insurance company denies coverage, the limitations period begins to run at the denial. *Murray,* 800 S.W.2d at 829. Footnote 2 states that, in the absence of an outright denial of coverage, the start of the limitations period should be determined on a case-by-case basis. Because Merriman's case involves a straightforward denial of coverage, Noteboom's reliance on footnote 2 is totally misplaced.

Nonetheless, the court, in an "abundance of caution," decided not to sanction Noteboom on this particular claim. Texas law on the accrual of good faith and fair dealing insurance claims changed twice just before this litigation. *See Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 168 (Tex.1987) (first recognizing the cause of action and altering the general rule in Texas to hold that statute of limitations begins running when underlying insurance contract claims are resolved); *Murray,* 800 S.W.2d at 829 (modifying *Arnold* and holding that limitations period begins to run on denial of coverage); *see also Liberty Mut. Fire Ins. Co. v. Richards,* 810 S.W.2d 232, 233 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (following *Murray* and noting that this is an emerging area of the law), *cert. denied,* 503 U.S. 1004, 112 S.Ct. 1759, 118 L.Ed.2d 423 (1992). Because Texas law was developing, the district court gave Noteboom the benefit of the doubt, liberally construing the *Arnold* claim as a good-faith argument for the modification of present law.

Noteboom's arguments that the other claims for negligence, gross negligence, and violations of the DTPA and the insurance code survive on the same rationale, however, are without merit. Noteboom apparently argues that because such claims were "inextricably intertwined" with the *Arnold* claim, that the causes of action would accrue at the same time. Texas law has long been

settled that the limitations period for the sanctioned causes of action begin to run on the date of reasonable discovery, which in the insurance context is the date coverage is denied. *See Citizens State Bank of Dickinson v. Shapiro,* 575 S.W.2d 375 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.) (negligence and gross negligence); Tex.Bus. & Comm.Code § 17.565 (DTPA); Tex.Rev.Civ.Stat.Ann. art. 21.21 § 16(d) (insurance code). All of Merriman's claims were barred when she brought suit, as Security's counsel pointed out several times before and after Merriman filed the action. There is no basis whatsoever for pursuing such claims when brought more than two years after outright denial of coverage, the inapplicable *Murray* footnote notwithstanding.

Rule 11 is not intended to stifle creative advocacy or to chill an attorney's enthusiasm in pursuing factual or legal theories. *See* Fed.R.Civ.P. 11 advisory committee note (1983 Amendment). But just as not every combination of chords constitutes a song, not every argument that the law should be otherwise counts as creative advocacy. Merriman's pleadings do not argue for the modification of the law of limitations; they do not suggest novel legal theories or a creative interpretation of a changing area of the law. The claims either rest on poor legal research, bad faith, or both. To say the least, the district court did not abuse its discretion in reprimanding Noteboom on this point.

In its second abuse-of-discretion argument, Noteboom suggests that the court sanctioned the firm for advancing a number of frivolous claims, one of which it insists it never asserted on Merriman's behalf. The firm contends that the court misread Merriman's pleadings to state a frivolous cause of action based on Security's resumption of benefits between July and December 1990. Noteboom concedes that its pleadings are ambiguous and might be read as the district court read them, but it argues that awarding sanctions on the basis of this ambiguity was an abuse of discretion.

Noteboom may be correct that awarding sanctions on the basis of ambiguous pleading *alone* would be a harsh exercise of discretion. However, the district court awarded sanctions based on several frivolous claims, not just this one, and the others are certainly sufficient to justify sanctions. Noteboom argues that the claims are not sanctionable, not that the sanction award should be reduced to reflect this claim's alleged merit. Therefore the question of whether or not this particular claim was

asserted is immaterial. The number of frivolous claims Noteboom forced Security to answer does not change the propriety of the court's determination that Noteboom should pay for the answer.

Similarly, Noteboom's third abuse-of-discretion argument, that Security engaged in separate acts of bad faith stretching for years, misses the point. Although Texas limitations law clearly bars Noteboom's *Arnold* claim, the district court did not sanction Noteboom for this claim. Therefore the question of whether or not individual acts perhaps actionable under *Arnold* were barred by limitations is irrelevant to the question at hand. The *Arnold* claims were simply not a factor in issuing sanctions.

C

Finally, Noteboom contends that $56,115.63 in sanctions is too great a penalty for the infraction. The firm suggests that the district court abused its discretion because it did not award the least amount of sanctions that would serve the purposes of the Rule. Although the district court has considerable discretion to set the appropriate sanction amount, *Willy v. Coastal Corp.,* 915 F.2d 965, 968 (5th Cir.1990); *Davis v. Veslan Enters.,* 765 F.2d 494, 500-01 (5th Cir.1985), we have held that the sanction imposed should be the least severe sanction that adequately furthers the purpose of the Rule. *Thomas,* 836 F.2d at 878. We have also held that a court may only award the attorneys' fees incurred in answering the sanctionable claims. *Id.*

Noteboom contends that attorneys' fees were not the least severe sanction available to deter the firm from improper conduct. On review, it is not necessary to psychoanalyze the Noteboom attorneys to discover the smallest dollar value that would deter. Our task is to ensure that the district court did not abuse its discretion in crafting a sanction award reasonably calculated to deter litigation abuse. *Thomas,* 836 F.2d at 872. We find that the district court did not abuse its discretion in holding that attorneys' fees were the least severe sanction available to deter Noteboom. Attorneys' fees are an appropriate sanction designed to deter frivolous litigation. Rule 11 lists attorneys' fees as one of several appropriate sanctions. Fed.R.Civ.P. 11(c)(2). Furthermore, the award of attorneys' fees is explicitly targeted to deference of litigation abuse. By forcing Noteboom to internalize the cost to Security of responding, the award of attorneys' fees approximates optimal deterrence. It will dissuade Noteboom and other lawyers in the future from pursuing exhausted claims without seeming

overly punitive or giving Security a windfall. The district court was well within the Rule and its discretion in assessing attorneys' fees as the proper mode of deterrence.

D

Noteboom finally contends that the court erred in awarding fees Security incurred answering both frivolous claims and nonfrivolous ones. In granting Security's motion for sanctions, the court ordered Security's lawyers to submit an affidavit setting out litigation costs for answering the sanctioned claims. Security's lawyers explained in their affidavit, however, that they were unable to separate out which costs were attributable to the *Arnold* claim the court did not sanction. Nonetheless, they declared that the fees would have been about the same with or without the *Arnold* claim, because all the claims involved essentially the same factual and legal research.

The court, "in order to achieve fairness and equity between the parties, and to avoid the possibility of duplicative charges[,]" reduced the amount of declared fees by ten percent to account for any marginal costs associated with the unsanctioned claim. The court's precaution was reasonable in light of the ratio of unsanctioned claims to sanctioned ones and the similar preparation required to answer all of the claims. This formula may not be scientific, but neither is it an abuse of discretion.

III

The district court did not abuse its discretion in awarding Rule 11 attorneys' fees against Noteboom in the amount of $56,115.63. Therefore, we AFFIRM.